# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| Jennifer Hough Rowland, as Personal Representative of the Estate of Mark Wayne Rowland, ) ) ) | |
| Plaintiff, ) | CASE NO.: |
| ) | |
| Versus ) | COMPLAINT |
| ) | |
| United States of America, ) ) ) ) ) | |
| Defendant. ) | |

The Plaintiff, complaining of the Defendant, alleges as follows:

1. That Mark Wayne Rowland ("Decedent") was at all relevant times herein a citizen of Darlington County, South Carolina, and was married to Jennifer Hough Rowland.

2. That Decedent and Jennifer Hough Rowland were at all relevant times herein the biological parents of Kyle Rowland, and Decedent was also the father of Danniel Marie Rowland.

3. That Decedent died on March 24, 2016, and his wife, Jennifer Hough Rowland ("Personal Representative"), was duly appointed the personal representative of Decedent's estate in the Darlington County Probate Court in case number 2016 ES16 00208 ("Estate").

4. That Personal Representative brings this action on behalf of Estate for damages recoverable pursuant to S.C. Code §15-5-90 and for damages recoverable by the statutory beneficiaries of the Decedent as determined by S.C. Code §15-51-20 (namely, Jennifer Hough Rowland-wife, Kyle Samuel Rowland-son, and Danniel Marie Rowland - daughter), and pursuant to S.C. Code §15-51-10, et seq.

1

5. The Defendant, United States of America ("USA"), is the proper party in this matter as this case is commenced and prosecuted against the USA pursuant to and in compliance with Title 28 U.S.C. § 2671 to § 2680, commonly referred to as the "Federal Tort Claims Act" ("FTCA").

6. That liability of the USA is predicated specifically on Title 28 U.S.C. § 1346(b)(1) and § 2674 because the personal injuries and resulting damages and death of which complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of agents and/or employees of the USA, including agents and employees of CareSouth Carolina, Inc. ("CareSouth"), which was at relevant times herein a Health Center Program grantee under 42U.S.C.254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n), and the aforesaid agents and employees of CareSouth (and therefore the USA) were at all such times acting within the course and scope of their office, agency or employment with CareSouth (and therefore the USA) while providing care or medical treatment to Decedent under circumstances such that the USA, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of South Carolina.

7. This Federal District Court has jurisdiction of this case, because this action is brought pursuant to and in compliance with 28 U.S.C. §§ 1346(b), 2671-2680 et seq., the FTCA, which vests exclusive subject matter jurisdiction of FTCA litigation in the Federal District Court.

8. That venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as the USA is a Defendant and a substantial part of the events or omissions giving rise to this action occurred in this district at CareSouth.

9. That CareSouth is a corporation organized and existing under the laws of the state of South Carolina doing business in Darlington County, South Carolina at 1268 Fourth Street, Suite A, Hartsville, and at all relevant times herein CareSouth was a Health Center Program grantee under 42U.S.C.254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n), that was funded and controlled and staffed by the USA whose agents and/or employees provided medical care and treatment to patients of CareSouth, including Decedent.

10. That at all relevant times herein Jennifer McLester Lynch ("Lynch") was a family nurse practitioner employed by CareSouth providing family medical care to Decedent, and was at all such times supervised by Stephen L. Smith, M.D. ("Smith"), another employee of CareSouth.

11. That all relevant times herein defendant CareSouth, a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n), was acting by and through its agents and employees, and, in particular, Lynch and Smith, who at all such times were acting within the course and scope of their agency and employment with CareSouth (and therefore the USA), making CareSouth, and therefore the USA, liable for their actions and omissions pursuant to the doctrine of <u>respondeat superior</u>, or, as applicable, actual, apparent or ostensible agency.

12. That Plaintiff has exhausted her administrative remedies, as required by the FTCA at 28 U.S.C. § 2672 and § 2675, or otherwise, as written notice of her administrative tort claim was presented by way of a properly completed and executed Form 95 (the claim) to the appropriate federal agency, the United States Department of Health and Human Services (USDHHS), via Federal Express on December 19, 2016, which was acknowledged in writing on January 12, 2017 as having been received by the USDHHS on December 20, 2016, said claim was supplemented with additional requested materials by way of Federal Express on

January 24, 2017 (received by USDHHS January 25, 2017), and the USDHHS (for the USA) has failed to make a final disposition of the claim within six (6) months after said filing, rendering the claim denied pursuant to 28 U.S.C. § 2675 and freeing Plaintiff to file this suit against the USA.

13. That Plaintiff attaches the affidavits of expert witnesses to comply with any South Carolina state law requirement that: (a) the applicability of which she can reasonably be expected to be on notice of as relates to FTCA litigation; (b) is not superseded by, in conflict with or duplicative of the requirements of the FTCA; and/or (c) that does not require the USA to consent to South Carolina state court jurisdiction.

14. That Plaintiff has complied with all jurisdictional pre-requisites and conditions precedent to commencement and prosecution of this litigation.

15. That on March 14, 2016 Decedent presented to CareSouth for medical treatment, and Lynch (who was being supervised by Smith) undertook to provide medical care and treatment to Decedent.

16. That on that date, March 14, 2016, Decedent's chief complaint was congestion, vomiting, diarrhea and abdominal, chest and head pain.

17. That on that date, March 14, 2016, Decedent reported that he had a four (4) days history of fever, cough with sputum, vomiting and diarrhea, weakness and extreme fatigue, so much so that he could not walk, and that he felt like he was dying.

18. That on that day, March 14, 2016, Decedent reported that he had thrown up fifteen (15) times and had diarrhea ten (10) times, and that he was feverish with chills, sweats, fatigue, weakness and malaise, congestion, cough, chest discomfort and excessive sputum, loss of appetite, dysuria, joint pain and muscle aches.

19. That upon presentation to CareSouth on March 14, 2016 Decedent's temperature was 102.7 degrees Fahrenheit, his pulse was 124, respirations 20, and he complained of pain of ten (10) on a scale of one (1) to ten (10).

20. That on March 14, 2016, upon examination, Lynch determined that Decedent had decreased breath sounds on the left and right, joint tenderness, diffuse abdominal tenderness, profuse sweating, and tender cervical nodes.

21. That on that date, March 14, 2016 Decedent had an abnormal urinalysis, and a slightly high glucose finger stick.

22. That on that date, March 14, 2016, Lynch ordered that Decedent be injected with Toradol 60 mgs for fever, and be given 2 liters of intravenous fluids for dehydration and an injection of Phenergan for nausea and vomiting.

23. That on that date, March 14, 2016, Lynch prescribed for Decedent Tamiflu, Azithromycin 500 mg. with all four tabs to be taken on that day, and Promethazine HCL 25 mgs to be taken 1-2 times every 6 hours.

24. That on that day, March 14, 2016, Lynch instructed Decedent to alternate between Tylenol and Motrin to include 650-1,000 mg of Tylenol every 4-6 hours and 400-600 mgs of Ibuprofen every 4-6 hours.

25. That on that date, March 14, 2016, Decedent was already being prescribed by CareSouth Norco 10-325, which is a combination of Hydrocodone and Acetaminophen, to be taken 4 times per day, as needed, and Lynch knew this.

26. That on March 21, 2016 Decedent returned to CareSouth, where he was seen again by Lynch and complained that he was not feeling much better, was still vomiting, could not eat, and could not drink anything but milk.

27. That upon presentation on March 21, 2016 Decedent's temperature was 97.6, his pulse 130, respirations 22, and blood pressure 97/59.

28. That on that date, March 21, 2016, Decedent complained of fatigue, weakness, malaise, congestion, loss of appetite, nausea and vomiting, abdominal pain, diarrhea, joint pain and stiffness, loss of strength, poor balance, numbness, falling down, weakness, anxiety, and mental problems.

29. That on that date, March 21, 2016, Lynch performed a physical exam and found that Decedent continued to have decreased breath sounds bilaterally, joint erythema and warmth, tenderness and swelling, neurological weakness, and Decedent had another abnormal urinalysis, and an extremely abnormal glucose finger stick.

30. That on March 21, 2016 Lynch once again prescribed in the office intravenous fluid administration to Decedent for dehydration, ordered a complete blood count and comprehensive metabolic panel, and prescribed him Levaquin.

31. That on March 22, 2016 CareSouth received the results of the complete blood count and comprehensive metabolic panel which showed that Decedent had a white blood cell count of 38,600, an AST of 73 (normal range is 0-40) and an ALT of 415 (normal range is 0-44) (ALT and AST are elevated with Acetaminophen toxicity).

32. That on that date, March 22, 2016, CareSouth called Decedent and told him to go to the emergency room.

33. That upon presentation at Carolina Pines Regional Medical Center Emergency Room, chest imaging was taken showing that Decedent had a very significant right upper lobe pneumonia with concern for necrotizing abscess, and he was diagnosed with sepsis secondary to pneumonia.

34. That at Carolina Pines Regional Medical Center Decedent's Acetaminophen level was checked and he was found to be toxic at 43.7; that Decedent had been taking Tylenol (Acetaminophen), as prescribed by Lynch on March 14, 2016, and Norco (containing Acetaminophen), as prescribed by CareSouth

35. That due to Decedent's Tylenol toxicity and pending liver failure, in addition to his severe sepsis secondary to necrotizing pneumonia and increasing white blood count, he was transferred via air to the Medical University of South Carolina in Charleston, South Carolina for tertiary care on March 23, 2016.

36. That the following day, March 24, 2016, Decedent died at 4:15 p.m. of hypoxic respiratory failure, hepatic failure, septic shock, and necrotizing pneumonia.

37. That at all relevant times herein Lynch, Smith and CareSouth were licensed under the laws of the state of South Carolina, and required to provide reasonably prudent medical care to Decedent.

38. That at all relevant times herein Lynch, Smith and CareSouth undertook the duty to render medical treatment to Decedent in accordance with the prevailing and acceptable professional standards of care for family medicine practitioners and their practices.

39. That, notwithstanding the undertaking of that duty, and while Decedent was under the care of Lynch, Smith and CareSouth, and therefore the USA, they departed from prevailing and acceptable professional standards of care and treatment of Decedent, and were negligent, grossly negligent, reckless, willful, wanton, in violation of the duty owed to Decedent, and the USA is therefore liable for one or more of their following acts of omission or commission, any and all of which are departures from the prevailing and acceptable professional standards of care:

a. In failing to appreciate that Decedent was seriously ill when he was seen on March 14, 2016;

b. In failing to appreciate that Decedent was suffering from pneumonia on March 14, 2016;

c. In failing to appreciate that Decedent was suffering from Sepsis on March 14, 2016;

d. In failing to immediately refer Decedent to the local hospital emergency room for further evaluation on March 14, 2016;

e. In failing to order STAT diagnostic tests on March 14, 2016, to include but not limited to a chest x-ray, complete blood count, comprehensive chemistry profile and blood cultures;

f. In failing to advise Decedent on March 14, 2016 that he was seriously ill and needed hospital inpatient care;

g. In failing to consult with a hospitalist on March 14, 2016;

h. In failing to provide adequate physician supervision of the nurse practitioners.

i. And, in such other and further particular those that may be set forth in the Affidavit of Arthur Herold, M.D., attached hereto as Exhibit A, incorporated fully herein by reference, and as may be ascertained through discovery and at trial.

40. That, therefore as a direct and proximate result of the aforementioned actions and omissions of Lynch, Smith and CareSouth, jointly and severally, and as evidenced by the Affidavit of Arthur Herold, M.D. attached hereto as Exhibit A, and the Affidavit of Michael Gelfand, M.D., attached hereto as Exhibit B, Decedent died after suffering severe and extreme pain and suffering, mental anguish, emotional distress, and unconscious pain and suffering the

likes of which no person should have to endure, he incurred significant medical bills for which his wife and his estate are now liable ($183,909.74), and his wife and children (namely, Jennifer Hough Rowland-wife, Kyle Samuel Rowland-son, and Danniel Marie Rowland - daughter) have suffered mental shock, suffering, wounded feelings, grief and sorrow, loss of his companionship and society, loss of his life, loss of his support, and such other and further damages, injuries and losses which may be discovered and proved at trial.

## FOR A FIRST CAUSE OF ACTION
## Survival Action

41. That Personal Representative hereby incorporates all prior paragraphs as if fully reiterated verbatim herein.

42. That, as aforesaid, as a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departures from the standards of care by CareSouth, its agents, servants and/or employees, including Lynch and Smith, jointly and severally, and therefore the USA, Decedent suffered from severe and debilitating untreated injuries which resulted in his death, but prior to his dying Decedent suffered severe and extreme pain and suffering, mental anguish and emotional distress, conscious pain and suffering the likes of which no person should have to endure, and significant medical bills ($183,909.74), and his Estate has now also incurred the costs of his funeral and burial ($900.25).

43. That Personal Representative is informed and believes that pursuant to S.C. Code §15-5-90 Decedent's Estate is entitled to compensation for the aforesaid damages, injuries and losses from the USA, in the maximum amount available under applicable state and federal law, and claims and demands judgment of $2,000,000.00 on the Survival Action.

## FOR A SECOND CAUSE OF ACTION
## Wrongful Death Action

44. That Personal Representative hereby incorporates all prior paragraphs as if fully reiterated verbatim herein.

45. That, upon information and belief, the aforesaid negligence, recklessness, and grossly negligent conduct of CareSouth, its agents, servants and/or employees, including Lynch and Smith, jointly and severally, and therefore the USA, contributed and proximately caused Decedent's untimely death, and as a result of the wrongful death of Decedent, the statutory beneficiaries/claimants, as determined by S.C. Code §15-51-20 (namely, Jennifer Hough Rowland-wife, Kyle Samuel Rowland-son, and Danniel Marie Rowland - daughter) have or will suffer grievous damages, including but not limited to mental shock and suffering, wounded feelings, grief and sorrow, loss of the decedent's companionship and love, deprivation of the use and comfort of the decedent's society, as well as the decedent's support, and such other damage as in the future will so suffer.

46. That Personal Representative is informed and believes that such statutory beneficiaries/claimants (namely, Jennifer Hough Rowland-wife, Kyle Samuel Rowland-son, and Danniel Marie Rowland - daughter) are each entitled to compensation for the aforesaid damages, injuries and losses from the USA, all pursuant to S.C. Code §15-51-10, et seq., in the maximum amount available under applicable state and federal law, and claims and demands $6,000,000.00, for a total judgment of $6,000,000.00 on the Wrongful Death Action.

WHEREFORE, the Plaintiff demands a bench trial and judgment against Defendant as follows:

a) An award of actual damages for the Estate of Mark Wayne Rowland pursuant to S.C. Code §15-5-90 on the First Cause of Action;

b) An award of actual damages for the statutory beneficiaries, as determined by S.C. Code §15-51-20 (namely, Jennifer Hough Rowland-wife, Kyle Samuel Rowland-son, and Danniel Marie Rowland - daughter), and pursuant to S.C. Code §15-51-10, et seq., on the Second Cause of Action;

c) The costs of this action; and

d) Such other and further relief as this Court may deem appropriate.

                  **By:** s/ William J. Tuck_____
                          William J. Tuck
                          SC Bar #68365, USDC Bar #7761
                          **WILLIAM J. TUCK, P.A.**
                          54 Public Square
                          Post Office Box 933
                          Darlington, SC 29540
                          (843) 393-2201 (P)
                          (843) 393-2216 (F)
                          williamtuckpa@bellsouth.net
September 20, 2017           ATTORNEY FOR PLAINTIFF